UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JAMES WYATT BOOTH, | Case No.: 20-10204 |
| Plaintiff, | Arthur J. Tarnow |
| v. | United States District Judge |
| MS. GEARY, | Curtis Ivy, Jr. |
| | United States Magistrate Judge |
| Defendant. | |
| _____/ | |

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 24)**

**I.    PROCEDURAL HISTORY**

Plaintiff James Wyatt Booth filed this civil rights matter without the assistance of counsel on January 27, 2020, against five Michigan Department of Corrections ("MDOC") officials and employees. (ECF No.1). Plaintiff alleges violations of the First and Fourteenth Amendments to the United States Constitution. Plaintiff's claims against defendants Stevenson, Desco, Doe, and Christiansen were summarily dismissed. (ECF No. 6, PageID.34). Only Plaintiff's claims against defendant Geary in her personal capacity remain. Geary moved for summary judgment on the issue of exhaustion of administrative remedies. (ECF No. 24). The motion is fully briefed. (ECF Nos. 28, 29). This

action was later referred to the undersigned for all pretrial proceedings. (ECF No. 12).

For the reasons below, the undersigned recommends Defendant's motion for summary judgment (ECF No. 24) be **GRANTED**.

## II.    BACKGROUND

### A.    Factual Background

During all times relevant, Plaintiff was in the custody of the MDOC housed at the Central Michigan Correctional Facility ("STF"). Booth worked in food services at STF from October 23, 2017 until July 25, 2019. (ECF No. 1, PageID.5). From July 2019 through December 2019, Booth applied for nine jobs he considered promotions. (*Id.*). He was denied every promotion. Plaintiff alleges the jobs he applied for were awarded to inmates with less seniority and experience. (*Id.*). Booth alleges defendant Celia Geary, a food services supervisor, denied his promotion because of his sexual orientation and mental illness. (*Id.* at PageID.4).

Booth was transferred to Parnall Correctional Facility ("SMT") on December 19, 2019. (ECF No. 28, PageID.125). Booth alleges he was transferred in retaliation for filing a grievance. Booth claims Christiansen, a warden at STF, and John Doe, prison transfer coordinator, retaliated against him by transferring him after he wrote to Christiansen complaining about Geary's discrimination. (ECF No. 1, PageID.4). Booth claims he was in constant fear "being put on a

continuous ride out," i.e., "'[r]iding the Circuit'" in retaliation.  Booth believes he was at his "true security level" at STF in the outpatient mental health unit and his transfer to SMT was retaliation.  (ECF No. 28, PageID.125).  Booth was housed in the Vocation Village in SMT for inmates training in Masonry, which he never signed up for.  He could not have signed up for this housing, as he was not eligible for parole board-required classes because his earliest release date was April 19, 2024.

Booth asserts he filed his Step I grievance on December 27, 2019 and his Step II grievance on January 13, 2020, both while housed at SMT.  (*Id.*).  He did not attach a copy of these grievances to his brief.  He claims his Step II grievance was ignored.  (*Id.* at PageID.124).  He asked about his grievance through interdepartmental mail.  (*Id.*).  Around this time, the law library at SMT closed because of a COVID-19 outbreak.  (*Id.* at PageID.125).  According to Booth's Step III grievance report submitted by Geary, the only grievance Booth pursued through Step III around this time concerns access to an appointment with a medical provider.  (ECF No. 24-3, PageID.110).

B.     Instant Motion for Summary Judgment

Defendant argues that Plaintiff pursued no Step III grievances arising out of STF.  The only grievance which he pursued through Step III after July 2019 was connected to another facility and is irrelevant to the instant complaint.  (ECF No.

3

24, PageID.94). Plaintiff seemingly responds he did not pursue Step III because he was afraid of retaliation. (ECF No. 28, PageID.124-25).

## III. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

That Plaintiff is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz [v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir.

2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

B. <u>Exhaustion under the PLRA</u>

Under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e *et seq.*, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted the provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007). Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits[.]" *Porter v. Nussle*, 534 U.S. 516, 524 (2002). In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures."

6

*Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. The prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

The prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 U.S. at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . ."). That said, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's

7

original complaint contained at least one fully exhausted claim." *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017).

Finally, "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA. *Id.* As such, defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

    C.    <u>Grievance Procedures at MDOC</u>

Pursuant to Policy Directive 03.02.130, dated March 18, 2019, the administrative remedies available at the MDOC are as follows. First, the inmate must attempt to resolve issues with the staff member involved within two business days of becoming aware of a grievable issue. (ECF 24-2, PageID.102, at ¶ Q). If the issues are not resolved within five business days, the inmate may file a Step I grievance using the appropriate form. (*Id.*). "Dates, times, places, and names of all those involved in the issue being grieved are to be included." (*Id.* at ¶ S). The inmate should receive a response at Step I within fifteen business days of filing the grievance. (*Id.* at ¶ T).

If the inmate is dissatisfied with the Step I disposition, or does not receive a response by ten business days after the due date, he or she may file a Step II

grievance using the appropriate form. (*Id.* at PageID.104, ¶ DD). As with Step I, the inmate should receive the Step II response within fifteen business days. (*Id.* at ¶ EE). Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response by ten business days after the due date, the inmate may file a Step III grievance. (*Id.* at PageID.105, ¶ HH). The matter is fully exhausted after the disposition of the Step III grievance. *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

D. Analysis

Geary argues Booth failed to exhaust his administrative remedies because Booth failed to pursue his grievance through Step III. Thus, she is entitled to summary judgment. (ECF No. 24). In Booth's response, he cites *Kaba v. Stepp*, 458 F.3d 678, 686-87 (7th Cir. 2006), where there was a genuine issue of fact whether the grievance process was available because plaintiff alleged prison staff withheld grievance forms and threatened him. Booth then alleges his transfer to SMT put him at the wrong security level and took him out of the mental health unit. He asserts that while at SMT he was in fear of being made to "ride the circuit" because of retaliation but does not explain what this means. (ECF No. 28). The undersigned will construe Booth's citation to *Kaba v. Stepp* and facts about his

9

transfer to be an argument that the grievance process was unavailable to him because of his transfer.

Prisoners may not pursue § 1983 actions until "administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has identified three circumstances in which administrative remedies are unavailable. Administrative remedies are unavailable when the process operates as "a simple dead end." *Ross v. Blake*, 578 U.S. 632, 643 (2016). Remedies are also unavailable when the procedures are "so opaque that it becomes … incapable of use." *Id.* Finally, an administrative remedy is unavailable when prison administrators stop an inmate from using the grievance process either through "machination, misrepresentation, or intimidation." *Id.* at 644. Plaintiff does not plead any facts that may lead a reasonable jury to believe that he found the grievance process a procedural dead end or opaque, so the undersigned will not consider those *Ross* factors.

To find that a plaintiff was threatened out of exhausting his remedies, the plaintiff must detail threats and actions that would "'deter a person of ordinary firmness from [continuing with the grievance process].'" *Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576, 577 (6th Cir. 2014), *aff'd and remanded sub nom. Simmons v. Himmelreich*, 578 U.S. 621 (2016) (quoting *Thaddeus–X v. Blatter*, 175 F.3d 378, 396 (6th Cir.1999)) (alteration in original). Plaintiffs must

10

plead claims of intimidation with specificity. *Id.* at 578. In *Himmelreich*, the plaintiff sufficiently described defendant's threats, detailing how defendant threatened plaintiff's transfer thereby guaranteeing his attack, which created a genuine issue of material fact whether defendant thwarted exhaustion. So that if the plaintiff's allegations were true, a reasonable jury could conclude that defendant's actions would deter a person of ordinary firmness from continuing with the grievance process. *Id.*

Booth alleges Christiansen and John Doe retaliated against him by transferring him after he wrote to Christiansen complaining about Geary's discrimination. (ECF No. 1, PageID.4). He alleges he was transferred out of his "true" security level and the outpatient mental health unit. After Booth's transfer, he filed his Step I and Step II grievances. (ECF No. 28, PageID.125). Booth has not sufficiently described intimidation for a reasonable jury to conclude he was intimidated from pursuing his grievance to Step III. He did follow through with the grievance process after his alleged intimidation, so he was not thwarted from exhaustion.

In *Himmelreich*, plaintiff alleged defendant threatened she would personally see that Himmelreich was transferred to a facility where he would "'more than likely be attacked and not just beat up.'" *Himmelreich*, 766 F.3d at 577. Then, after he was transferred, he was placed in the Special Housing Unit ("SHU").

11

There, the defendant allegedly yelled, "'you want to know why you're here? It's because of the … Tort Claim you filed! That's why you're in here!'" *Id.* at 578. Defendant followed through on her threat to transfer him to a more violent unit after plaintiff sued. *Id.* The allegations in that case created a genuine issue whether defendant thwarted plaintiff's exhaustion, even though plaintiff pursued unrelated minor complaints at the same time, when "there were specific allegations in the record that [defendant] actually retaliated against [plaintiff] for filing grievances and lawsuits related to a specific assault." *Id.*

Booth's allegations lack the same specificity or suggestion of intimidation. Booth alleges he was transferred in retaliation for complaining to Christiansen about Geary's discrimination. (ECF No. 1, PageID.4). But no reasonable jury could conclude the transfer was intimidating to such a degree to render the grievance process unavailable. Booth states he filed his Step I grievance and Step II appeal *after* he was transferred to SMT. (ECF No. 28, PageID.125). Any fear Booth felt after his transfer did not stop him from proceeding with the grievance process at SMT. He was not thwarted from exhaustion because of intimidation.

Having concluded the grievance process was not unavailable to Plaintiff, what remains is the undisputed fact that Plaintiff did not file his grievance through Step III on the issues alleged in this case. There is no record of Booth pursuing Step III. The only Step III grievance Booth filed around the time of this suit relates

12

to insufficient medical care, not the discrimination at issue. (ECF No.24-3, PageID.110). Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the [PLRA] makes exhaustion a precondition to filing an action in federal court." *Freeman*, 196 F.3d at 645. Because Plaintiff failed to pursue his grievance through the three-step process, he did not meet the precondition to filing this action. For these reasons, Geary's motion should be granted.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendant's motion for summary judgment (ECF No. 24) be **GRANTED** and this case should be dismissed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

13

*Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: December 29, 2021.    s/Curtis Ivy, Jr.
Curtis Ivy, Jr.
United States Magistrate Judge

**CERTIFICATE OF SERVICE**

    The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on December 29, 2021.

                                                 s/Kristen MacKay
                                                 Case Manager
                                                 (810) 341-7850